## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**LaShone Middleton-Thomas and**
**Guinans Carol Cleveland,**

       **Plaintiffs,**

**v.**                             **Case No. 17-2023-JWL**

**Piat, Inc.**
**f/k/a ServPro of Olathe/Lenexa, Inc.,**

       **Defendant.**

## <u>MEMORANDUM & ORDER</u>

Plaintiffs filed this lawsuit against defendant Piat, Inc. alleging race discrimination and racial harassment in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981. Plaintiff Cleveland asserts two additional claims—a claim for retaliation under Title VII and § 1981 and a state law claim for retaliatory discharge. This matter is presently before the court on defendant's motion for summary judgment on all claims of both plaintiffs (doc. 137). As will be explained, the motion is denied as to plaintiff Thomas's claim that defendant denied her a pay increase based on race; is denied as to plaintiff Cleveland's discriminatory discharge and retaliation claims; and is otherwise granted.

## I.      Facts

The following facts are uncontroverted or related in the light most favorable to plaintiffs as the nonmoving parties. Defendant Piat, Inc. is a local ServPro franchisee. Its primary business is to remediate and restore homes and businesses that have been damaged by water or fire.

Defendant employs administrative office employees who answer the phones, audit job files to ensure they are properly billed, bill the customers, and handle payments and accounts receivable. Plaintiff LaShone Middleton-Thomas began working in defendant's administrative office on February 4, 2015.[1] She earned an hourly wage of $13.00 during the course of her employment. When plaintiff Thomas first started working for defendant, she generally was an administrative assistant and, in that capacity, answered the phones, processed paperwork, and performed other administrative tasks as directed by the office manager. Plaintiff Thomas also acted as the "back up" scheduler when the scheduler was absent. The scheduler dispatches and schedules field technicians to work at various properties throughout the day and is responsible for getting field technicians to work sites at the appropriate time. At some point during her employment, plaintiff Thomas also began placing supply orders for defendant. Mike Hogan, defendant's operations manager since 2011, instructed plaintiff Thomas what to purchase and plaintiff Thomas would place the order. At all times, plaintiff's direct supervisor was the office manager who, until November 2016, was Dru Farthing. When Ms. Farthing was terminated in November 2016, Terri Kesler became the officer manager. The office manager reported to Cory Bates, one of defendant's owners. The other two owners of defendant were Jack Whitaker and Clo Whitaker.

In August 2015, Mssrs. Bates and Hogan hired plaintiff Guinans Carol Cleveland as a project manager. Plaintiff Cleveland's annual salary throughout her employment with defendant was $50,000. Shortly after plaintiff Cleveland was hired, defendant created a new position for plaintiff Cleveland and she began handling some of the work that Mr. Hogan had been performing

---

[1] Because plaintiff refers to Ms. Middleton-Thomas as "plaintiff Thomas," the court does so as well.

as operations manager.  Specifically, in September 2015, plaintiff Cleveland became defendant's Human Resource and Safety Manager.  In this role, plaintiff was responsible for typical human resource functions, such as bringing employees' concerns to management; advising managers on employee discipline; and coordinating hiring.  She was also responsible for maintaining the company's fleet of vehicles and for complying with certain safety regulations.  During her employment, plaintiff Cleveland reported directly to Mr. Hogan.  Plaintiff Cleveland does not dispute that, by March 2016, Mr. Hogan believed that plaintiff Cleveland had significant performance issues in her role as Human Resource and Safety Manager.  Among other issues, Mr. Hogan believed that plaintiff was insubordinate by distributing forms and policies to production staff without discussing those forms and policies with Mr. Hogan and by failing to conduct safety trainings despite being asked to do so.  Mr. Hogan also believed that plaintiff Cleveland had a misunderstanding of government regulations resulting in unnecessary costs to the company.  The record reflects that plaintiff Cleveland and Mr. Hogan had frequent discussions about defendant's compliance with DOT regulations and, to a lesser extent, OSHA regulations.

In June 2016, plaintiff Thomas became aware that Mr. Bates had concerns about plaintiff's performance when she received an email from Ms. Farthing conveying Mr. Bates' concerns.  According to Ms. Farthing's email, Mr. Bates was concerned about plaintiff Thomas's attitude and the fact that she always seemed unhappy.  He was also concerned with the amount of time that plaintiff Thomas spent in plaintiff Cleveland's office and he did not understand why those meetings or visits were occurring so frequently.  In early August 2016, Mr. Bates himself expressed concerns to plaintiff Thomas about having low energy and appearing "kind of down" and he wondered whether plaintiff Thomas did not like him or did not like ServPro.  Around this

same time, plaintiff Thomas made a complaint via email to Mr. Bates and Ms. Farthing in which she stated that she believed she was being treated differently than others at ServPro based on her race. Plaintiff Thomas highlighted that she had been at work for 17 months without a pay raise and that defendant was scrutinizing her work, work habits and personality traits more closely than it scrutinized other employees. She alleged that defendant had stereotyped her as an "Angry Black Woman." Mr. Bates, Ms. Farthing and plaintiff Cleveland met with plaintiff Thomas the following day to discuss her concerns and then met again a few days later to discuss any additional concerns.

Mr. Hogan reviewed plaintiff Cleveland's performance in August 2016 and he communicated the issues he had with plaintiff Cleveland's performance both before her review, during her review and after her review. Based on his opinion regarding plaintiff Cleveland's performance, Mr. Hogan did not recommend a salary increase and plaintiff did not receive one. In late October or early November 2016, defendant's payroll vendor, Bukaty Companies, offered to handle the human resource functions that plaintiff had been performing and it offered to do so at a significantly lower cost than plaintiff Cleveland's annual salary. Mr. Bates discussed the offer with Mr. Hogan and they agreed that having Bukaty perform the human resource functions for defendant would be a good decision due to the cost savings and because plaintiff Cleveland's performance had not met defendant's expectations. Mssrs. Bates and Hogan decided to terminate plaintiff Cleveland's employment, effective November 21, 2016, and to outsource her position. Defendant did not replace plaintiff Cleveland; Bukaty has performed the human resource aspects of plaintiff's position and other employees of defendant have performed the safety-related aspects of plaintiff's position. Plaintiff avers that just 12 days prior to her termination, on November 9,

2016, she reported to Clo Whitaker that she felt like she was being treated differently than other management staff and that defendant "was violating multiple OSHA and DOT regulations."

Plaintiff Thomas resigned her employment on September 8, 2017. Defendant did not replace plaintiff Thomas and other administrative office employees have absorbed her duties.

Additional facts will be provided as they relate to the specific arguments raised by the parties in their submissions.

## II.     Summary Judgment Standard

"Summary judgment is appropriate if the pleadings, depositions, other discovery materials, and affidavits demonstrate the absence of a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Water Pik, Inc. v. Med–Systems, Inc*., 726 F.3d 1136, 1143 (10th Cir. 2013) (quotation omitted); *see* Fed. R. Civ. P. 56(a). A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Water Pik, Inc*., 726 F.3d at 1143 (quotation omitted). "The nonmoving party is entitled to all reasonable inferences from the record; but if the nonmovant bears the burden of persuasion on a claim at trial, summary judgment may be warranted if the movant points out a lack of evidence to support an essential element of that claim and the nonmovant cannot identify specific facts that would create a genuine issue." *Id*. at 1143-44.

## III.     Exhaustion of Administrative Remedies

Federal courts lack jurisdiction over Title VII claims that were not previously covered in a claim presented to the Equal Employment Opportunity Commission. *Shikles v. Sprint/United*

*Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005). Stated another way, exhaustion of administrative remedies is a prerequisite to suit and administrative remedies generally must be exhausted as to each discrete instance of discrimination or retaliation. *See Apsley v. Boeing Co.*, 691 F.3d 1184, 1210 (10th Cir. 2012). "Exhaustion still serves the important purposes of protecting employers by giving them notice of the discrimination claims being brought against them and providing the EEOC with an opportunity to conciliate the claims." *Hung Thai Pham v. James*, 630 Fed. Appx. 735, 738 (10th Cir. Oct. 20, 2015) (quoting *Gad v. Kansas State Univ.*, 787 F.3d 1032, 1040 (10th Cir. 2014)). Defendant moves for summary judgment on several claims asserted by both plaintiffs for failure to exhaust administrative remedies.

In her September 30, 2016 charge of discrimination—the only one she filed—plaintiff Thomas alleges discrimination based on race and describes the "particulars" as follows:

I. I was hired by Respondent on or about 2/15 and I am employed as an Asst. Scheduler.

II. During my employment, I have been assigned the job duties of extra positions to perform without receiving a pay increase for doing so. A white employee has received a pay increase each time her assigned job duties have been changed. I was offered a wage increase which was revoked after I wrote a letter complaining of discrimination.

III. I have been subjected to a hostile work environment in that my performance and attendance are closely scrutinized while white . . . employees are not subjected to such scrutiny.

IV. I believe this is discrimination against me because of my race, black, in violation of Title VII of the Civil Rights Act of 1964, as amended, . . . and retaliation against me for opposing acts made unlawful by the laws enforced by EEOC.

She averred that the earliest date of discrimination was May 1, 2016 and that the latest date of discrimination was July 29, 2016. She also marked the "continuing action" box with respect to the dates that the discrimination occurred.[2]

Plaintiff Thomas now seeks to assert Title VII claims based on allegations that defendant required her to "clock out" for lunch breaks but did not require Caucasian employees to do so and that defendant denied her paid-time-off hours but provided such hours to Caucasian employees.[3] Plaintiff does not dispute that these claims are not expressly included in her charge of discrimination but contends that those claims are "reasonably related" to the wage claims asserted in the pretrial order. Plaintiff's argument, however, relies on language and authorities that the Tenth Circuit abrogated many years ago. *See Freppon v. City of Chandler*, 528 Fed. Appx. 892, 898-99 (10th Cir. July 1, 2013) (citing *Martinez v. Potter*, 347 F.3d 1208 (10th Cir. 2003) (unexhausted claims involving discrete employment actions are no longer viable, including termination claims arising after a charge of discrimination has been filed)). The court, then, is required to dismiss these Title VII claims. *See id.*; *accord Goldsby v. James*, 580 Fed. Appx. 685, 686 (10th Cir. Oct. 23, 2014) (district court properly dismissed unexhausted termination claim

---

[2] Plaintiff Thomas also checked the "retaliation" box but she has not pursued that claim.

[3] Defendant contends that plaintiff Thomas, in her deposition, attempted to assert additional claims that she did not exhaust and defendant moves for summary judgment on these claims on that basis (*e.g.*, a claim based on written discipline she received in April 2017). But none of those claims are set forth in the pretrial order and, in any event, plaintiff does not press those "claims" in her summary judgment response. Because those "claims" are simply not a part of this case at this juncture, the court need not address defendant's arguments. *See Maestas v. Segura*, 416 F.3d 1182, 1190 n.9 (10th Cir. 2005) (party appeared to abandon claim by failing to address it in its brief); *Hinsdale v. City of Liberal, Kan.*, 19 Fed. Appx. 749, 768-69 (10th Cir. 2001) (affirming district court's ruling that plaintiff abandoned claim by failing to address it in response to motion for summary judgment) (citing *Coffey v. Healthtrust, Inc.*, 955 F.2d 1388, 1393 (10th Cir. 1992)).

that arose after the filing of the charge and rejected "outdated" authority permitting pursuit of unexhausted claims when "reasonably related" to those included in charge) (citing *Eisenhour v. Weber County*, 744 F.3d 1220, 1227 (10th Cir. 2014) (explaining abrogation of exhaustion exception for reasonably related claims by discrete-incident rule)).[4] The only discrete claim of race discrimination set forth in plaintiff Thomas's charge is her claim that defendant denied her a wage increase based on her race.

Defendant also contends that plaintiff Thomas failed to exhaust her racial harassment claim because she failed to include in her charge the identity of any alleged harasser or the time period of the harassment. This argument is rejected because the Tenth Circuit does not require that level of specificity in a charge of discrimination. Plaintiff expressly alleged in her charge that she was subjected to a hostile work environment based on her race and the approximate time period is clear on the face of the charge. While plaintiff does not identify an alleged harasser, her allegations concerning performance and attendance scrutiny are sufficient to put defendant on

---

[4] Defendant's exhaustion argument, of course, has no bearing on plaintiff's § 1981 claims. According to defendant, plaintiff has waived any § 1981 claims asserting that defendant required her to "clock out" for lunch breaks and that defendant denied her paid-time-off hours because those claims do not appear in the pretrial order. *Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002). The court agrees that the pretrial order is devoid of any reference to a claim concerning paid-time-off hours such that any such claim under § 1981 is waived. And while the pretrial order references plaintiff's coworkers failing to clock out over their lunch hours, the pretrial order raises that allegation in the context of a hostile work environment claim, suggesting only that plaintiff complained to management about her co-workers' conduct and that management failed to investigate her complaint. The pretrial order does not contain an allegation that defendant required plaintiff to clock out over her lunch hour. In fact, plaintiff alleges in the pretrial order that her supervisor told her in May 2017 that she did not have to clock out for her lunch hour. Plaintiff, then, has waived any § 1981 claim based on an allegation that defendant required her to clock out over lunch. Moreover, plaintiff's waiver of these claims is additional reason supporting summary judgment on her Title VII claims as well.

notice that plaintiff's supervisor or supervisors were likely the subject of those allegations. No more is required. Plaintiff Thomas has sufficiently exhausted her claim of racial harassment. *See Jones v. Needham*, 856 F.3d 1284, 1290-92 (10th Cir. 2017) (charge need only "describe generally" the alleged discrimination in order to give notice of an alleged violation to the employer; factual allegations supporting plausibility not required).

In plaintiff Cleveland's November 22, 2016 charge of discrimination (like plaintiff Thomas, plaintiff Cleveland filed only one charge), she alleges discrimination based on race and retaliation and describes the "particulars" as follows:

> I was hired by Servpro on August 3, 2015 to work as a Project Manager. My position later changed to HR, Safety and Fleet Manager. I held this position until I was wrongfully discharged on or about November 21, 2016.
>
> During my employment I witnessed favoritism and racism in employment actions of the employer. Black employees were denied raises while white employees were given raises. I complained to upper management about the flagrant disregard of company funds by its Operations Manager. Subsequently I was given a poor performance and denied a raise. On November 2, 2016, I again informed upper management of the actions of the Operations Manager that cost the employer a great deal of money. Then on or about November 21, 2016 I was told that my position was being outsourced and I was discharged.
>
> I believe I have been given poor performance evaluations, denied pay increases and discharged because my race (black) in violation of Title VII of the Civil Rights Act of 1964 . . . and in retaliation for complaining of unfair acts and practices.

Plaintiff Cleveland averred that the earliest date of discrimination was August 1, 2016 and that the latest date of discrimination was November 21, 2016. She also marked the "continuing action" box with respect to the dates that the discrimination occurred.

Plaintiff Cleveland now seeks to add a claim based on allegations that defendant, based on plaintiff Cleveland's race, denied her "compensatory time" for overtime hours that she worked.[5] She concedes that this claim does not appear in her charge of discrimination but contends that the court may consider it nonetheless because it is reasonably related to her wage claim. For the same reasons that the court rejected plaintiff Thomas's argument, plaintiff Cleveland's argument is rejected. *See Eisenhour v. Weber County*, 744 F.3d 1220, 1227 (10th Cir. 2014) (explaining abrogation of exhaustion exception for reasonably related claims by discrete-incident rule)). The court, then, dismisses plaintiff's claim that defendant denied her compensatory time based on her race and defendant's motion is granted to this extent.[6]

Defendant contends that plaintiff Cleveland has failed to exhaust any race discrimination claim stemming from defendant's denial of a pay increase and the termination of plaintiff Cleveland's employment because the charge contains no "facts" supporting those claims. The court easily concludes that plaintiff Cleveland's charge satisfies the purpose of administrative exhaustion—to give notice of the alleged violation to the employer and to give the EEOC an opportunity to conciliate the claim. *See Jones v. Needham*, 856 F.3d 1284, 1290 (10th Cir. 2017). Plaintiff Cleveland marked the "race discrimination" box and expressly identified her termination

---

[5] Defendant contends that plaintiff Cleveland, in her deposition, attempted to assert additional claims that she did not exhaust and defendant moves for summary judgment on these claims on that basis. Because plaintiff Cleveland does not pursue or even mention any of these claims in her summary judgment submissions, the court deems any other claims abandoned.

[6] To the extent this claim is asserted under § 1981, summary judgment is also appropriate. According to defendant, it provided "comp time" only to production and marketing employees because those employees were required to work long hours after the normal business day and were often "on call" on the weekends. Plaintiff directs the court to no evidence suggesting that defendant's explanation is unworthy of belief and she directs the court to no evidence that any non-production, non-marketing employee received comp time.

and the denial of a pay increase as specific instances of race-based discrimination. These allegations are sufficient to alert defendant to plaintiff's race discrimination claims and to trigger an investigation into the circumstances underlying plaintiff's termination and her denial of a wage increase. And unlike a complaint filed in federal court, there is no requirement that a charge of discrimination contain sufficient facts to render the claim plausible. *See id.* at 1291-92.

In summary fashion, defendant also contends that plaintiff Cleveland failed to exhaust her administrative remedies with respect to her hostile work environment claim because plaintiff has not included any "facts identifying any alleged harasser, the type of discrimination complained of, or the time period of any alleged harassment." The court rejects this argument for the same reason it rejected the argument in connection with plaintiff Thomas's charge—namely, the Circuit does not require the level of specificity espoused by defendant and plaintiff Cleveland's charge sufficiently indicates that she witnessed racism in the workplace over the course of her employment.

Lastly, defendant contends that plaintiff Cleveland has not adequately exhausted a claim for Title VII retaliation because the facts alleged in her charge do not reflect that she complained of any practice prohibited by Title VII. This argument goes to the merits of plaintiff's claim rather than the exhaustion requirement and the court rejects it. Plaintiff marked the "retaliation" box on her charge and alleged that she was discharged in retaliation for complaining of unfair acts and practices. This is sufficient to satisfy the purpose of exhaustion and to trigger an investigation into plaintiff's complaints and her termination. *See id.* at 1291-92.


IV.    **Race Discrimination**

Both plaintiffs assert that defendant denied them a pay increase based on race. Plaintiff Cleveland also asserts that defendant terminated her employment based on race. Plaintiffs concede that they have no direct evidence of discrimination, and their claims are therefore analyzed using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 627 (10th Cir. 2012). Under *McDonnell Douglas*, each plaintiff has the initial burden of establishing a prima facie case of discrimination. *Id.* To set forth a prima facie case of discrimination, plaintiff must establish "(1) membership in a protected class and (2) an adverse employment action (3) that took place under circumstances giving rise to an inference of discrimination." *Id.* (citing *EEOC v. PVNF, LLC*, 487 F.3d 790, 800 (10th Cir. 2007)). If she establishes a prima facie case, the burden shifts to defendant to assert a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If defendant meets this burden, summary judgment against plaintiff is warranted unless she introduces evidence "that the stated nondiscriminatory reason is merely a pretext for discriminatory intent." *Id.* (citing *Simmons v. Sykes Enters.*, 647 F.3d 943, 947 (10th Cir. 2011)).[7]

A.  *Plaintiff Thomas's Denial-of-Pay-Increase Claim*

Plaintiff Thomas challenges defendant's decision not to give her a merit increase in her hourly wage at any time during the course of her employment. Defendant contends that summary

---

[7] The court's analysis of plaintiffs' Title VII claims applies equally to their claims under § 1981. *See Crowe v. ADT Security Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) ("A plaintiff may prove violation of Title VII or 42 U.S.C. § 1981—the standards are the same—either by direct evidence of discrimination, or by adhering to the burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).").

judgment is warranted because plaintiff cannot establish a prima facie case with respect to this claim. Specifically, defendant contends that plaintiff cannot establish that similarly situated employees outside plaintiff's protected class were treated more favorably with respect to merit increases in pay. But plaintiff is not required to show differential treatment of similarly situated employees to satisfy her prima facie burden. *See Sorbo v. United Parcel Serv*., 432 F.3d 1169, 1173 (10th Cir. 2005) (comparison to similarly situated employees is not required as part of a plaintiff's prima facie case; the relevant prima facie element may be framed more broadly, requiring only a "showing of circumstances giving rise to an inference of discrimination").[8] The court, then, rejects defendant's arguments concerning plaintiff's prima facie case.

The court turns, then, to whether defendant has met its burden to articulate a legitimate, nondiscriminatory reason for its failure to give plaintiff a merit increase in her hourly wage. This "burden is one of production, not persuasion; it can involve no credibility assessment." *Carter v. Pathfinder Energy Servs., Inc*., 662 F.3d 1134, 1149 (10th Cir. 2011) (quoting *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 142 (2000)). The Tenth Circuit has characterized this burden as "exceedingly light," and the court finds that defendant has carried it here. *See id.* According to defendant, Mr. Bates declined to give plaintiff a raise because defendant was already paying her at the top of the pay scale for her entry-level position, her performance did not merit a

---

[8] Relying on the Tenth Circuit's decision in *Sprague v. Thorn Americas, Inc*., 129 F.3d 1355, 1363 (10rth Cir. 1997), defendant contends that plaintiff must establish at the prima facie stage that she was paid less than similarly situated employees. Sprague, however, addressed a claim based on "equal pay" allegations or, stated another way, allegations that the plaintiff was paid less than her male counterparts. Here, plaintiff is not alleging that she was paid less than her non-African-American counterparts; she alleges that she was denied a merit increase in her pay based on her race. *Sprague*, then, is distinguishable from the facts here.

raise, and she had declined a promotion to the scheduler position. The burden of proof, then, shifts back to plaintiff to show that defendant's proffered reasons are pretextual.

Evidence of pretext "may take a variety of forms," including evidence tending to show "that the defendant's stated reason for the adverse employment action was false" and evidence tending to show "that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances." *Id*. at 1150 (quoting *Kendrick v. Penske Transp. Servs., Inc*., 220 F.3d 1220, 1230 (10th Cir. 2000)). A plaintiff may also show pretext with evidence that the defendant had "shifted rationales" or that it had treated similarly situated employees differently. *Crowe v. ADT Servs., Inc*., 649 F.3d 1189, 1197 (10th Cir. 2011). In essence, a plaintiff shows pretext by presenting evidence of "weakness, implausibility, inconsistency, incoherency, or contradiction in the employer's stated reasons, such that a reasonable jury could find them unconvincing." *Debord v. Mercy Health System of Kansas, Inc*., 737 F.3d 642, 655 (10th Cir. 2013).

The record evidence, reviewed in the light most favorable to plaintiff, is sufficient to cast doubt on defendant's proffered reasons. Mr. Bates testified that Dru Farthing, as the office manager, was in the best position to evaluate plaintiff's behavior, work activities and work product. Ms. Farthing, on at least two occasions, requested a wage increase for plaintiff Thomas and documented numerous reasons supporting the increase. This, of course, suggests that plaintiff was eligible for a raise regardless of her position on the pay scale. And other evidence in the record demonstrates that while plaintiff's wage may have been "near" the top of the scale, it was not at the very top of that scale and that some room existed for an adjustment. Moreover, because Mr. Bates admits that Ms. Farthing was in the best position to analyze plaintiff's performance,

Ms. Farthing's recommendation of a raise suggests that plaintiff's performance was not necessarily a factor in the decision to deny her a raise. The record also suggests that when Ms. Farthing presented her raise requests to Mr. Bates, he rejected those requests and, in doing so, highlighted only plaintiff's attitude (a highly subjective criteria) without any reference to pay scales or any specific criticism of her performance. Finally, the evidence does not demonstrate that plaintiff's alleged refusal to accept a promotion to the scheduler position affected her pay rate in the position she held. In combination, plaintiff's evidence is sufficient to survive summary judgment on this claim and the jury must resolve factual disputes underlying that claim.

B.    *Plaintiff Cleveland's Denial-of-Pay-Increase Claim*

Plaintiff Cleveland challenges defendant's decision not to give her a merit increase in connection with her August 2016 performance review. Because defendant's motion is silent on the issue, the court assumes that defendant is not challenging plaintiff Cleveland's ability to establish a prima facie case. According to defendant, it denied plaintiff a raise in August 2016 because plaintiff's direct supervisor, Mr. Hogan, did not believe that plaintiff's performance merited a pay raise. In fact, it is undisputed that Mr. Hogan raised specific, objective concerns with plaintiff about her performance before, during and after her August 2016 performance review. Those concerns included, among other things, Mr. Hogan's belief that plaintiff was insubordinate by distributing forms and policies to production staff without discussing those forms and policies with Mr. Hogan and by failing to conduct safety trainings despite being asked to do so; and Mr. Hogan's belief that plaintiff Cleveland had a misunderstanding of government regulations resulting in unnecessary costs to the company.

In an effort to show that defendant's legitimate, nondiscriminatory reasons for failing to give plaintiff a pay raise are pretextual, plaintiff Cleveland highlights that she was never disciplined for violating any specific policy; that she never missed work; that she worked long hours; and that she "outperformed" Caucasian employees. But none of these facts casts doubt on the specific reasons offered by defendant or in any way calls into question the specific performance issues set forth in Mr. Hogan's affidavit. Athough Mr. Hogan mentioned a handful of minor issues on plaintiff's performance evaluation that plaintiff now challenges as pretextual (such as her wearing blue jeans on occasion), there is no evidence that these minor issues had any bearing on whether to give plaintiff a pay raise or otherwise factored into Mr. Hogan's decision not to give plaintiff a pay increase. Plaintiff's arguments on those issues, then, are simply not relevant and do not show a factual dispute on any genuine issue. Because plaintiff has failed to establish pretext with respect to her claim that defendant failed to give her a pay raise based on her race, summary judgment in favor of defendant is granted on that claim.

C.      *Plaintiff Cleveland's Discriminatory Discharge Claim*

Defendant concedes for purposes of summary judgment that plaintiff Cleveland has established a prima facie case with respect to her claim that defendant terminated her employment on the basis of her race. According to defendant, it terminated plaintiff's employment because it decided to outsource defendant's human resources functions to a third-party vendor at a significant savings, particularly in light of plaintiff's performance issues. In an effort to show pretext, plaintiff contends that defendant's reason is unworthy of belief because it outsourced only the human resources part of plaintiff's job and that plaintiff's duties involving safety regulation and

code compliance were not outsourced. But plaintiff does not dispute that those functions were absorbed by existing employees and that defendant, thus, still realized a significant savings by outsourcing the human resources aspect of the job and letting existing employees perform the rest of plaintiff's duties. In any event, plaintiff's argument does not address the performance-related reasons proffered by defendant.

On that issue, plaintiff contends that her performance was not really a factor in the decision to outsource her position because a Caucasian warehouse manager received a worse evaluation than she did and his position was not outsourced. Evidence that a similarly situated employee received better treatment can suggest that the employer's alleged nondiscriminatory reason is pretextual. *Roberts v. International Business Machines Corp.*, 733 F.3d 1306, 1310 (10th Cir. 2013). As the Circuit has explained, however, "to provide a basis for reliable comparison, the other employee must, in fact, be similarly situated—that is, reporting to the same supervisor, held to the same standards, and afoul of those standards to at least the same degree. And it falls on the employee alleging discrimination to rule out alternative explanations for the differential treatment." *Id*. (citing *Timmerman v. U.S. Bank, N.A*., 483 F.3d 1106, 1120-21 (10th Cir. 2007)).

Plaintiff's comparison to the warehouse manager fails to permit an inference of pretext.[9] There is no suggestion that the warehouse manager position was the type of position that defendant

---

[9] Plaintiff also attempts to compare defendant's treatment of Veneta Smith to defendant's treatment of her. While the record certainly reflects that Ms. Smith had a host of performance problems, there is no evidence that Ms. Smith was directly supervised by Mr. Hogan or that she held a managerial position like plaintiff. In fact, the record reflects that Ms. Smith was supervised and evaluated by Matt Haney and she did not hold a management position. No reasonable jury, then, could infer pretext from a comparison between plaintiff and Ms. Smith. *See Jones v. Denver Post Corp.,* 203 F.3d 748, 752–53 (10th Cir. 2000) (nonsupervisory employees generally not

could outsource to a third party; there is no evidence that the warehouse manager's duties were remotely similarly to plaintiff's duties in human resources; and there is no evidence that the deficiencies in the warehouse manager's performance were similar in kind to those Mr. Hogan found in plaintiff's performance. In any event, the evidence demonstrates that defendant treated this employee the same way in which it treated plaintiff—defendant failed to give the employee a pay raise at the employee's October 2016 performance review and ultimately terminated the employment of the warehouse manager for performance deficiencies. Plaintiff Cleveland also asserts that she had a reputation for being a competent and dedicated employee. But as the Circuit has repeatedly held, an employee's self-assessment of her performance is not enough to show pretext; only the manager's perception of the employee's performance is relevant. *See, e.g.*, *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1179 (10th Cir. 2006) (finding that employee's subjective beliefs regarding her attitude, knowledge, and performance did not raise a genuine issue of material fact regarding employer's stated bases for her termination).

Nonetheless, plaintiff has come forward with evidence that, if credited by a jury, could suggest that defendant factored plaintiff's race into its discharge decision. There is evidence in the record that Cory Bates told plaintiff that she was "fishing for racism" in her discussions with African-American employees and that Mr. Bates, Mr. Hogan and Ms. Whitaker asked other employees, including plaintiff Thomas, if plaintiff Cleveland was "pushing" racism in the workplace. There is evidence that Mr. Hogan, whenever plaintiff met with African-American employees in her office, referred to those meetings as "black meetings" or a "black thing" and

---

deemed similarly situated to supervisory employees with respect to disciplinary matters); *Roberts*, 733 F.3d at 1310 (employees are similarly situated only if they report to same supervisor).

pressed plaintiff for information about the content of those meetings. While the record does not reveal the full context of these statements, the record does not foreclose the possibility that plaintiff's race, in conjunction with her position as HR manager and the way in which she was carrying out her position as an African-American human resources manager, played a part in defendant's decision to terminate plaintiff's employment. A jury must resolve this claim.

## V.      Racial Harassment Claims

In the pretrial order, plaintiffs contend that defendant subjected them to racial harassment sufficiently severe or pervasive to alter the terms and conditions of their employment. To survive summary judgment on a claim of racial harassment, plaintiffs must present evidence that creates a genuine dispute of material fact as to whether the workplace is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1222 (10th Cir. 2015). A plaintiff "does not make a showing of a pervasively hostile work environment by demonstrating a few isolated incidents of racial enmity or sporadic racial slurs. Instead, there must be a steady barrage of opprobrious racial comments." *Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 680 (10th Cir. 2007).

Even taking the evidence in the light most favorable to plaintiff Thomas, she cannot raise a genuine factual issue that her workplace amounted to a racially hostile environment. In support of her claim, plaintiff Thomas first asserts that she experienced an incident so severe that it, standing alone, was sufficient to alter the terms and conditions of employment. That incident concerns a former employee named Andrew Nail. According to plaintiff, Mr. Nail's employment

was terminated after he made a vulgar, racist comment in the workplace. Mr. Nail, after hearing that a co-worker's African-American wife suffered a miscarriage, allegedly said "That's one less cotton-picking nigger in the world." There is no suggestion that plaintiff Thomas heard this remark or had knowledge of the remark until after the termination of Mr. Nail's employment. In any event, the evidence reflects that defendant terminated Mr. Nail's employment immediately and, shortly thereafter, Mr. Bates and Mr. Hogan began hearing "rumors" that Mr. Nail was threatening to come back to the workplace and "shoot up the place" during a breakfast meeting scheduled on April 13, 2016. Mr. Bates contacted the Olathe Police Department and the police investigated the threat of violence and determined that no threat existed. Indeed, the breakfast meeting occurred without incident and there is no evidence that Mr. Nail ever returned to the workplace.

Plaintiff Thomas's claim is that defendant should have informed her that Mr. Nail had been terminated for making a racist remark and had threatened to come to the breakfast meeting and "shoot up the place." According to plaintiff Thomas, she is responsible for letting people through the security doors at the workplace and she attended the breakfast meeting. Plaintiff Thomas asserts that she was thus placed in a position "where her life was threatened." She contends that defendant's "racially discriminatory decision to not inform" plaintiff Thomas of the "Andrew Nail situation," while informing Caucasian employees, is severe enough to constitute racial harassment. But there is no evidence that defendant distributed information about Andrew Nail based on race. The record reflects that defendant, at the advice of the Olathe Police Department, did not alert all employees because it "would have been sounding an unnecessary alarm." Mr. Hogan testified that he did not inform anyone at all about the potential threat and that Mr. Bates

told only two senior-level management employees who were given specific instructions by the police on protecting employees in the unlikely event Mr. Nail came to the building. Mr. Bates similarly testified that he told only Mr. Hogan and the two management-level employees identified by Mr. Hogan in his deposition. There is simply no basis in the record, then, for plaintiff's suggestion that defendant notified Caucasian employees about a potential threat from Andrew Nail but elected not to tell African-American employees about a potential threat. Plaintiff has substantially mischaracterized the record. In short, no reasonable jury could conclude that the Andrew Nail incident was based on plaintiff's race or that the incident in any way amounted to harassment.

In the alternative, plaintiff attempts to show that she experienced "pervasive" harassment based on race. She directs the court, however, to only one overtly racial remark made by a co-worker. According to plaintiff, Veneta Smith on one occasion referred to plaintiff as a "colored girl." But the record is not clear whether plaintiff heard the remark or even had knowledge of the remark prior to this litigation. Rather, the deposition testimony cited by plaintiff suggests that Ms. Smith referred to plaintiff Thomas as a "colored girl" in a conversation with another employee, who later reported the remark to management. This single remark, then, hardly makes plaintiff's workplace permeated with discriminatory intimidation, ridicule and insult and falls far short of the "steady barrage" required for a racially hostile environment claim. *Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005) (holding that two racially offensive remarks "[fell] far short of the 'steady barrage' required for a [racially] hostile environment claim").

Plaintiff contends that additional incidents support her hostile work environment claim, including that Caucasian employees refused to return her phone calls; that Mr. Bates changed her

positive performance evaluation to a negative one; that defendant refused to investigate her claims of race discrimination; that defendant burdened her with other employees' responsibilities; that Mr. Hogan criticized her performance and micromanaged her work; and that Jack Whitaker left a copy of the book "The Seven Laws of Spiritual Success" on her desk. These incidents, however, are facially neutral. While "facially neutral abusive conduct can support a finding of [discriminatory] animus sufficient to sustain a hostile work environment claim when that conduct is viewed in the context of other, overtly . . . discriminatory conduct," *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1224 (10th Cir. 2015) (internal quotation marks and brackets omitted), the requisite "holistic analysis" does not support a finding that plaintiff's environment was "polluted" with racially offensive harassment. *See id*. at 1227. In other words, no reasonable jury could find a "racial dimension" to the race-neutral conduct identified by plaintiff. *See id*. Summary judgment on plaintiff Thomas's racial harassment claim is warranted in favor of defendant.

The court turns, then, to plaintiff Cleveland's racial harassment claim. Like plaintiff Thomas, plaintiff Cleveland's claim is based in large part on the Andrew Nail incident. For the reasons described above, plaintiff Cleveland has not demonstrated that anything about this incident was based on race or sufficiently severe to constitute harassment. She also attempts to establish that she experienced "pervasive" racial harassment in the workplace, beginning with evidence of two comments that she contends were "racially charged." In November 2015, Project Manager Matthew Minshall told plaintiff Cleveland in front of other managers during a meeting that she could "stand behind me and be my shadow."[10] Plaintiff testified that she could not recall

---

[10] In support of her assertion that calling an African-American a "shadow" is a racial comment, plaintiff cites only to the deposition testimony of Mr. Bates and, in doing so, suggests that Mr.

any specific context for this remark.  In March 2016, employee Joel Bates asked plaintiff during plaintiff's safety check of employees' Personal Protective Equipment (PPE) bags, "What do you want me to do, tap dance for you?"  Finally, plaintiff avers that "[w]henever I had a meeting in my office, Mike Hogan would always approach me afterword [sic] to talk to me about the meeting and would often refer to the meetings as 'black meetings' or 'black thing.'"

Even assuming the race-based nature of these comments, plaintiff Cleveland has failed to set forth a genuine issue of material fact as to whether the comments were sufficiently pervasive so as to alter the terms and conditions of her employment.[11]  While the court recognizes that the "pervasiveness evaluation is particularly unsuited for summary judgment because it is inherently fact-found by nature," *see id*. at 1222, a plaintiff is nonetheless still required to show "more than a few isolated incidents of racial enmity."  *Id*. at 1223.  The comments set forth by plaintiff were sporadic and the two comments she relies on the most—the shadow" and "tap dance" comments— are not facially offensive or racial and plaintiff provides no context for those comments that might inform the issue.  Moreover, there is no evidence that plaintiff subjectively believed that the "tap dance" comment was race-based.  And there is no evidence that plaintiff Cleveland believed that Mr. Hogan's references to "black meetings" altered the terms and conditions of her employment and otherwise affected her in any way.  Tellingly, in cases involving far more egregious facts than

_____

Bates admitted as much in his deposition.  Mr. Bates clearly testified, however, that he did not believe that the term was racially charged in the context in which he believed it was used.  According to Mr. Bates, the term was used in the context of a discussion about "job shadowing" so that employees could learn different aspects of different jobs in the company.

[11] As reflected in connection with plaintiff's discriminatory discharge claim, the court does not discount entirely the evidence concerning Mr. Hogan's references to "black meetings."  But those references, even if true, are not sufficient to support a claim for racial harassment under the standard articulated by the Circuit.

those alleged by plaintiff, the Circuit has held that the evidence of pervasiveness was a "close" question. *See id*. at 1213-17, 1227 (involving multiple and continual references to racial stereotypes, a discussion of lynching, habitual use of the term "nigga" and references to "the hood," and direction to address a vice president with "yes massa"); *Herrera v. Lufkin Indus., Inc*., 474 F.3d 675, 680-82, 683 (10th Cir. 2007) (involving several discrete incidents of racial harassment over four years and ongoing harassment, including comments referring to plaintiff's ethnicity every two to three days).

Like plaintiff Thomas, plaintiff Cleveland also relies on evidence of facially neutral conduct to support her harassment claim, including that she was denied a door to her office; that she was written up for wearing blue jeans; that Mr. Hogan undermined her by advising employees to disregard her directives; and that, on one occasion, an unidentified employee left a PPE bag in plaintiff's office that contained soiled female underwear. But because plaintiff Cleveland has not come forward with a "steady barrage of opprobrious racial comments," no reasonable jury could unearth a racial dimension to these facially neutral acts. *See Young v. City of Idabel*, 721 Fed. Appx. 789, 800 (10th Cir. 2018) ("Though facially race-neutral workplace misconduct can play a role in engendering a racially hostile work environment, it is not sufficient standing alone; there actually must be race-based discriminatory conduct polluting the environment."). Summary judgment on plaintiff Cleveland's racial harassment claim is appropriate.

## VI.    Pattern and Practice Claims

Plaintiffs also purport to assert individual claims for "pattern and practice" racial discrimination and harassment. Defendant moves for summary judgment on the grounds that such

claims are not available to individual plaintiffs. In response, plaintiffs inexplicably assert only that the case relied upon by defendant in support of its motion—*Daniels v. United Parcel Service, Inc.*, 701 F.3d 620, 633 (10th Cir. 2012)—is not binding on the court. *Daniels* is a published Tenth Circuit case expressly holding that individual plaintiffs cannot bring pattern-or-practice claims and is clearly binding on this court. Summary judgment is granted in favor of defendant on these claims.

## VII.    Retaliation

Plaintiff Cleveland asserts that defendant terminated her employment in retaliation for plaintiff's opposing in good faith what she believed were discriminatory employment practices. As plaintiff has no direct evidence of retaliation, her claim is analyzed using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 638 (10th Cir. 2012). To state a prima facie case for retaliation, plaintiff must show that (1) she engaged in protected opposition to discrimination, (2) a reasonable worker would have considered the challenged employment action materially adverse, and (3) a causal connection existed between the protected activity and the materially adverse action. *Id*. If plaintiff presents a prima facie case of retaliation, then defendant must respond with a legitimate, nonretaliatory reason for the challenged action. *Parker Excavating, Inc. v. Lafarge W., Inc.*, 863 F.3d 1213, 1220 (10th Cir. 2017). If defendant satisfies this burden, plaintiff must show that defendant's reason was merely a pretext for retaliation. *Id*.

In its motion for summary judgment, defendant contends that plaintiff cannot establish the first or third elements of her prima facie case. According to defendant, the "manager rule"

established by the Tenth Circuit in *McKenzie v. Renberg's, Inc.*, 94 F.3d 1478 (10th Cir. 1996), dictates that plaintiff did not engage in protected opposition to discrimination. Under the "manager rule," employees who are required as part of their job duties to report or investigate complaints of discrimination cannot claim that the reporting or investigating itself is a protected activity under the "opposition clause" because conveying others' discrimination complaints is not the same as opposing unlawful practices. Defendant contends that summary judgment is appropriate because plaintiff Cleveland never stepped outside her role as defendant's Human Resources manager in conveying other employees' complaints of discrimination.

In her response, plaintiff asserts that she engaged in protected activity on November 9, 2016 when she reported to Clo Whitaker that she felt like she was being treated differently than other management staff.[12] This allegation is clearly distinct from conveying complaints of other employees such that defendant's reliance on the "manager rule is misplaced. Moreover, despite the fact that plaintiff's allegation about her own complaint on November 9, 2016 appears in the pretrial order, defendant's motion for summary judgment does not address this specific aspect of plaintiff's retaliation claim. Rather, defendant challenges that allegation only in its reply brief after plaintiff emphasized the allegation in her response to the motion for summary judgment.

---

[12] In its reply, defendant contends that plaintiff Cleveland's affidavit is a "sham" affidavit that the court must disregard because the affidavit contains facts not revealed in her deposition. But an affidavit will be considered a sham only if it contradicts the affiant's prior sworn testimony. *See Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986) (explaining that we will disregard an affidavit submitted at summary judgment that contradicts the affiant's prior sworn testimony if it "constitutes an attempt to create a sham fact issue," taking into account factors including opportunity for cross-examination at prior testimony, whether later testimony is based on newly discovered evidence, and "whether the earlier testimony reflects confusion which the affidavit attempts to explain"). Defendant has not shown that the affidavit contradicts plaintiff's prior testimony.

The court, then, declines to address defendant's belated argument. *See Lynch v. Barrett*, 703 F.3d 1153, 1160 n.2 (10th Cir. 2013) (court does not consider arguments raised for the first time in reply brief).

In any event, the evidence viewed in the light most favorable to plaintiff demonstrates that plaintiff was the only African-American member of management; that she complained to Clo Whitaker on November 9, 2016 that she was being treated differently than other members of management (all of whom were Caucasian); that defendant terminated her employment just 12 days later; that Ms. Whitaker had some involvement in the termination decision; and that Ms. Whitaker, along with Mr. Bates and Mr. Hogan, questioned plaintiff Thomas about whether plaintiff Cleveland was "pushing" racism in the workplace. Taken together, a reasonable jury could conclude that plaintiff engaged in protected activity on November 9, 2016 and that Ms. Whitaker knew that plaintiff, on November 9, 2016, was opposing a practice made unlawful by Title VII. Thus, even if defendant had challenged this aspect of plaintiff's retaliation claim in its opening brief, the court would nonetheless have denied summary judgment on that issue.

The court turns, then, to the rest of the *McDonnell Douglas* framework. In support of her retaliation claim, plaintiff Cleveland has additional evidence beyond the evidence she relied on in connection with her race discrimination claim. In addition to the close temporal proximity between her discussion with Clo Whitaker and her termination, there is evidence in the record that Cory Bates told plaintiff that she was "fishing for racism" in her discussions with African-American employees and that Mr. Bates, Mr. Hogan and Ms. Whitaker asked other employees, including plaintiff Thomas, if plaintiff Cleveland was "pushing" racism in the workplace. Defendant does not address these allegations in the context of plaintiff's retaliation claim. Viewed

in the light most favorable to plaintiff, that evidence could be construed by a reasonable jury as evidence that defendant believed that plaintiff Cleveland was stirring up complaints of race discrimination against defendant or encouraging employees to question whether they were experiencing racism in the workplace. And a reasonable jury could conclude that defendant terminated plaintiff Cleveland's employment based on its belief that plaintiff was stirring up trouble in the workforce, even if plaintiff's performance was also a reason for the decision. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013) (retaliation claim requires proof that desire to retaliate was the but-for cause of decision but not necessarily sole cause of decision). For these reasons, plaintiff Cleveland's evidence is sufficient to survive summary judgment on her retaliation claim and summary judgment on this claim is denied.

## VIII.  State Law Retaliatory Discharge

Plaintiff Cleveland also asserts that defendant terminated her employment in retaliation for raising concerns to Mr. Hogan and Ms. Whitaker about defendant's compliance with OSHA and DOT regulations.[13]  Specifically, plaintiff asserts that that she told both Mr. Hogan and Ms. Whitaker that defendant's water technicians were dumping sewage on the ground by the trash dumpsters and on the side of the warehouse; that defendant's fire technicians were required to obtain Hepatitis B vaccinations but were not doing so; and that defendant's DOT-certified drivers

---

[13] Plaintiff has abandoned any retaliatory discharge claim based on her allegations that she raised concerns that Mr. Hogan had wasted company funds and that employees were taking company property for their personal use.

were not maintaining driving logs and were not maintaining current required documentation on file.

The Kansas Supreme Court has recognized the tort of retaliatory discharge as a public policy exception to the employment-at-will doctrine. *See Palmer v. Brown*, 242 Kan. 893, 896 (1988). As the Court noted in *Palmer*:

> Public policy requires that citizens in a democracy be protected from reprisals for performing their civil duty of reporting infractions of rules, regulations, or the law pertaining to public health, safety, and the general welfare. Thus, we have no hesitation in holding termination of an employee in retaliation for the good faith reporting of a serious infraction of such rules, regulations, or the law by a co-worker or an employer to either company management or law enforcement officials (whistle-blowing) is an actionable tort.

*Id*. at 900. To establish this claim, an employee has the burden of proving by clear and convincing evidence, under the facts of the case, that a reasonably prudent person would have concluded the employee's employer was engaged in activities in violation of rules, regulations, or the law pertaining to public health, safety, and the general welfare; that the employer had knowledge of the employee's reporting of such violation prior to discharge of the employee; and that the employee was discharged in retaliation for making the report. *Id*. In addition, the "whistle-blowing" must have been done out of a good faith concern over the wrongful activity reported rather than from a corrupt motive such as malice, spite, jealousy or personal gain. *Id*. If the employee establishes a prima facie case, the employer then bears the burden of producing evidence that the employee was terminated for a legitimate nonretaliatory reason. The burden then shifts back to the employee to show that the employer's reasons are pretextual. *Goodman v. Wesley Medical Center, LLC*, 276 Kan. 586, 590 (2003).

Defendant moves for summary judgment on this claim on the grounds that plaintiff cannot establish a prima facie case. Specifically, defendant contends that the concerns that plaintiff expressed to Mr. Hogan about OSHA and DOT compliance were nothing more than "workplace disagreements" as opposed to a report of violations of OSHA or DOT regulations. *See Fowler v. Criticare Home Health Servs., Inc*., 27 Kan. App. 2d 869, 876 (2000) ("*Palmer* simply was not meant to endow every workplace dispute over the water cooler on company practices and the effect of government regulation with whistle-blower overtones."). Defendant has not met its burden of showing the absence of a genuine factual dispute on this issue because the factual record concerning the nature and extent of plaintiff's discussions with Mr. Hogan about defendant's compliance with OSHA and DOT regulations is not adequately developed.

But even assuming that plaintiff's conversations with Mr. Hogan amounted to no more than workplace disagreements about how defendant was handling its obligations under the pertinent regulations, defendant's motion fails to address or mention plaintiff's evidence that she reported to Ms. Whitaker on November 9, 2016 that defendant was violating multiple OSHA and DOT regulations. This allegation appears in the pretrial order such that defendant was on notice of it and yet it failed to address that allegation in its opening brief. The court, then, need not address defendant's belated argument in its reply brief. *See Lynch v. Barrett*, 703 F.3d 1153, 1160 n.2 (10th Cir. 2013) (court does not consider arguments raised for the first time in reply brief).[14]

_____

[14] Even if the court was inclined to address the argument, it would reject it. Defendant contends that plaintiff's statement in her affidavit insufficient to establish the requisite "report" because her report to Ms. Whitaker was devoid of any facts or explanation supporting any alleged violation of OSHA or DOT regulations. Defendant is incorrect. Plaintiff's affidavit does not speak to the facts or explanation that plaintiff may have provided to Ms. Whitaker. Thus, while the affidavit contains no facts or explanation as to what plaintiff specifically reported to Ms. Whitaker, the

Finally, defendant contends that plaintiff cannot demonstrate that defendant's proffered reason for terminating plaintiff's employment is pretextual. The court finds that plaintiff has come forward with sufficient evidence to survive summary judgment on this claim. There is evidence that plaintiff consistently raised concerns with Mr. Hogan about defendant's compliance with OSHA and DOT regulations; that plaintiff complained to Mr. Bates in August 2016 that she was receiving "continuous pushback" from defendant on DOT compliance issues; that plaintiff reported to Clo Whitaker on November 9, 2016 that defendant was violating OSHA and DOT regulations; and that defendant terminated plaintiff's employment 12 days later. In light of these facts, a jury must resolve plaintiff Cleveland's claim for retaliatory discharge under Kansas law.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for summary judgment (doc. 137) is **granted in part and denied in part**. The motion is denied as to plaintiff Thomas's claim that defendant denied her a pay increase based on race; is denied as to plaintiff Cleveland's discriminatory discharge and retaliation claims; and is otherwise granted.

**IT IS SO ORDERED.**

Dated this 3rd day of July, 2018, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

---

court cannot conclude that plaintiff's report (as opposed to plaintiff's affidavit) contained no facts or explanation as to the alleged violations.